## B. L. Crumb & Co. v. Hiram Phettiplace.

1. EVIDENCE—*Conditional Acceptances.*—Where an order is orally accepted and payment promised upon the condition that it is right, the only question for trial is the correctness of the order, and evidence having no tendency to show that the order was or was not right is not competent.

2. INSTRUCTIONS—*Ignoring Competent Testimony.*—An instruction which amounts to an elimination of competent evidence from the case is erroneous.

**Memorandum.**—Assumpsit.   Appeal from the Circuit Court of Winnebago County; the Hon. JAMES SHAW, Judge, presiding.   Heard in this court at the December term, 1893.   Reversed and remanded.   Opinion filed May 22, 1894.

The opinion states the case.

CARVER & FISHER, attorneys for appellants.

FROST & McEVOY, attorneys for appellee.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

This suit was brought by appellants against appellee upon an alleged verbal acceptance by appellee of the following order:

"ROCKFORD, Ill., Sept. 30, 1892.

POST & PHETTIPLACE:

Pay B. L. Crumb & Co. $885, in full, for material furnished on your house to date, and deduct the same from fourth payment.                    W. S. JOHNSTONE."

There was a trial resulting in a verdict for defendant on which judgment was entered against plaintiffs for costs.

W. S. Johnstone, who drew the order, was a contractor who was building a four-flat house for Post & Phettiplace for the sum of $7,500, payable in five payments as follows:   $700 when the foundation was completed, $2,000 when the building was inclosed ready for lathing, $2,000 when the building was ready for finish, $1,800 when the doors were hung, sash glazed and in place, and casings and base complete, and $1,000 when the building was completed, accepted and delivered free from all liens.   Plaintiffs furnished lumber to said contractor for the flats to the amount of $1,070.93, and the order was given for the balance due for such material.

Johnstone had been building several houses for different owners, and had been getting lumber from plaintiffs during

the summer for the various buildings that he was erecting. The lumber was all charged to him, and the day-book indicated the particular building to which each lot of lumber therein charged was sent. The account was made out monthly and a statement was rendered on the first of each month for all the lumber bought in the previous month. The account for the lumber furnished for the Post & Phettiplace flats was begun in August. Among other payments made by Johnstone on his account with plaintiffs was one of $617.99 made by check of Johnstone on Forest City National Bank on August 27th, payable to plaintiffs, for which payment plaintiffs gave the following receipt:

"Rockford, Ill., August 27, 1892.

Received of W. S. Johnstone, $617.99, being $517.99 to balance July bill and $100 on August account.
$617.99.                                    B. L. Crumb & Co."

Credit was given in accordance with the receipt. The $100 mentioned was credited on the account for lumber furnished for the flats, and a balance of $85.93 from an order of one Bradley was also credited thereon, making $185.93 credited on the bill of $1,070.93 for such lumber, and leaving a balance of $885 due, for which the order was drawn.

The question at issue between the parties on the trial, related to the acceptance of the order.

Plaintiffs claimed that defendant accepted it without condition, and two members of plaintiff's firm testified to such unconditional acceptance. Several other witnesses testified to statements of defendant that he had accepted the order and agreed to pay it. The claim of defendant was that he only agreed to accept and pay the order provided it was right, and he contended that it was not right because the whole of the above mentioned check was not credited on the bill for lumber for the flats. He alone contradicted all the testimony on the part of plaintiffs, both as to the acceptance being unconditional and as to admissions of such an acceptance. He testified that he said that he would accept and pay the order if plaintiffs convinced him that it was right,

and that he told the member of the firm who presented it that if he would go before a justice and swear that the bill was right, he would accept and pay it. In support of defendant's contention that the order was not right, the court permitted him, against the objection of plaintiffs, to prove the condition of Johnstone's bank account. He was allowed to show that Post & Phettiplace paid Johnstone $2,000 for the second payment on the flats on August 26th, and to examine the president of the bank on which the check was drawn, and prove by him that Johnstone deposited that amount in the bank on the 26th, and that almost all the funds to Johnstone's credit when the check was paid the following day consisted of such deposit. There was no evidence tending to prove, nor was there any pretense that the payment to Johnstone was made upon any condition as to its application, or that there was any agreement as to what he should do with it or any right in defendant of control over it. One of the plaintiffs was present when that payment was made, and there was evidence tending to prove that Johnstone then said to him, "I will see you to-morrow and pay you something then;" but that promise, if made, did not render the evidence competent or affect Johnstone's right to pay the money where he pleased. It was his absolutely, to do with as he pleased, free from any control of defendant, who had no right to impeach the credit given or the application of the money. The evidence was incompetent, and had no tendency to show that the order was not right.

The court also permitted defendant to prove the state of the account between Post & Phettiplace and Johnstone, and to show that at the time of the trial, he had only $500 left of the amount due Johnstone. The order was on the fourth payment of $1,800, and there was also another payment of $1,000 coming due afterward. If defendant paid out all but $500 before the trial it would afford no defense to an action on the acceptance if made. This evidence did not tend to prove that the order was not right or not accepted, and should not have been admitted.

The fifth instruction for defendant was as follows:

" The court instructs the jury that even though you may believe from the evidence that the defendant, Hiram Phettiplace, may have stated to some of the witnesses on the part of plaintiff, that he had accepted the order in controversy, still, the court instructs you, the law is, that defendant can not be held to pay said order solely on account of such statements; that unless you further believe from the evidence, defendant accepted said order or promised the plaintiffs to pay the same, he can not be held by any statement to others, that he had accepted or promised to pay said order."

The evidence of an acceptance consisted in part of the testimony of several witnesses that defendant had stated to them that he accepted and agreed to pay the order, and this instruction practically denied to plaintiff all benefit of such evidence of admissions. That evidence tended to prove the fact of acceptance, and yet the jury were told that although the admissions of such fact were made by the defendant they must further believe from the evidence that he accepted the order, or else he could not be held to pay it.

By this instruction, the same fact which the evidence of admissions tended to prove was required to be proved by other evidence, and this amounted to an elimination of that evidence from the case, which was wrong. The judgment will be reversed and the cause remanded.